**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JENNIE O'BRYAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-00153** |
| | ) | **Judge Aleta A. Trauger** |
| **US BANK NATIONAL ASSOCATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM</u>

Plaintiff Jennie O'Bryan brings suit against her former employer, US Bank National Association ("US Bank"), asserting claims of discrimination and retaliation on the basis of age and sex, in violation of the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.* Now before the court is US Bank's Partial Motion to Dismiss and Motion to Strike (Doc. No. 13), seeking dismissal of the plaintiff's claims under Title VII for failure to exhaust and dismissal of her retaliation claim under the ADEA for failure to state a claim for which relief may be granted and seeking to strike the claims for compensatory and punitive damages, as these forms of relief are not available under the ADEA.

For the reasons set forth herein the motion will be granted in part but, for the larger part, denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff's Complaint (Doc. No. 1), was filed on February 21, 2020. Very generally, O'Bryan alleges that she began working for US Bank as a bank teller in 1984 upon graduation from high school. Over the next thirty-plus years, she was consistently promoted, with her salary,

benefits, and incentives increasing commensurately with her increased responsibilities, and she always excelled at each role she occupied. In thirty-four years, she was never subject to a disciplinary action.

In 2014, she was promoted to the position of Regional Manager/Vice President ("RM/VP") in US Bank's Wealth Management Group, where she was responsible for managing metropolitan markets across five states, including Ohio, Kentucky, Tennessee, Kansas, and Missouri. The plaintiff, together with two other RM/VPs, Mike Martin and Gina Taylor, supervised fourteen three-person teams consisting of Wealth Management Bankers, Advisors, and Associates. The plaintiff supervised the bankers, while Martin and Taylor, respectively, supervised the advisors and associates, but all three teams and supervisors were meant to work collaboratively.

As RM/VP for banking, O'Bryan worked directly with Martin, co-managing their teams. During this time, Martin was "overtly hostile and aggressive toward Plaintiff, trying to work around the direction they were both given and excluding her from meetings with the team." (Doc. No. 1 ¶ 31.) Martin gave directions to the plaintiff's team members without her knowledge and made disparaging comments to her. O'Bryan alleges that Martin "did not treat male employees the same way." (*Id.* ¶ 34.)

O'Bryan filed a complaint with Human Resources that Martin was "treating her differently due to the fact that she was a woman." (*Id.* ¶ 35.) When the plaintiff followed up with Martin's boss, Martin's boss scheduled weekly telephone calls with the two of them for a few weeks, but Human Resources never responded to the plaintiff's complaint or conducted an investigation.

In April 2017, US Bank announced that it had created the position of Associate Division Manager ("ADM") for the Midwest and had already filled that position with Faith Tupman, a younger person with much less experience in the relevant areas than the plaintiff. The plaintiff was

not advised that this position was being created or given the opportunity to interview for it. At the same time, Martin was promoted to ADM as well and was thus Tupman's partner and a level above the plaintiff. Martin, too, is younger than O'Bryan.

Among other duties, Tupman became the plaintiff's supervisor. Tupman immediately transferred a large part of the plaintiff's team to herself, significantly impacting the plaintiff's earning capacity and income. No other RM/VP's territory was reduced or reassigned.

During her supervision of the plaintiff, Tupman frequently made comments regarding O'Bryan's age, referring to her as an "old regional manager," insinuating or stating outright that younger employees were more competent, and telling O'Bryan that she should "get with the younger employees and learn new things." (Doc. No. 1 ¶¶ 50, 51.) On one occasion she instructed a younger employee to see if he could "teach the old dog new tricks." (*Id.* ¶ 52.)

Tupman repeatedly postponed the plaintiff's 2017 end-of-year evaluation and 2018 mid-year evaluation. When O'Bryan requested that she perform them, Tupman initially told her it was "too much trouble" and, when she finally did do a belated 2018 mid-year review, the information contained in it was inaccurate, "setting Plaintiff up for negative performance markers at years-end, which would further affect Plaintiff's income." (*Id.* ¶ 55.) O'Bryan brought the inaccurate numbers to Tupman's attention, at which "Tupman angrily and forcefully ripped the papers from Plaintiff's hand, stating that she would have her administrative assistant correct" the review, but she never did. (*Id.* ¶ 56.)

The next paragraph of the Complaint states: "Plaintiff complained that she was being treated differently than the younger employees." (*Id.* ¶ 57.) After that, Tupman "continued to praise younger employees and questioned Plaintiff's ability to perform her job, while at the same time standing Plaintiff up for meetings and ignoring her requests and business needs." (*Id.* ¶ 58.)

Tupman accused O'Bryan of being unethical and told her she would institute an investigation. Tupman subsequently admitted that there would be no such investigation. In mid-October 2018, O'Bryan was accused by a younger employee, one of Martin's supervisees, of "making a profane statement" to that individual. (*Id.* ¶ 60.) Human Resources pressured O'Bryan into admitting she had made the alleged statement even though the accusation was false. Tupman told O'Bryan that she would investigate the situation, but O'Bryan was never contacted about any investigation. Instead, she was wrongfully terminated on November 8, 2018.

The plaintiff alleges that Tupman and Martin, who worked collaboratively on all issues affecting their respective teams, were both involved in the termination decision. The plaintiff alleges that the reasons given for her termination were pretextual. Following her termination, Tupman gave to younger employees the territory she had taken away from the plaintiff.

The plaintiff specifically alleges that she was discriminated against with regard to compensation and the terms of her employment because of her age and gender and that she was wrongfully discharged because of her age and gender, in violation of the ADEA and Title VII. She also asserts that she engaged in protected activity for "opposing Defendant's discriminatory conduct" under both the ADEA and Title VII, that such protected activity was known to the defendant, and that she was retaliated against because of engaging in protected activity when her employment was terminated. She seeks various forms of relief, including back pay, reinstatement or front pay, and compensatory and punitive damages. (Doc. No. 1, at 11.)

Attached to the Complaint as an exhibit is an EEOC Notice of Right to Sue dated January 7, 2020. (Doc. No. 1-2.) The EEOC referenced EEOC Charge no. 494-2019-00626 and an ADEA claim only.

US Bank attached to its Memorandum of Law in support of its partial dismissal motion (Doc. No. 14) a copy of the plaintiff's EEOC Charge No. 494-2019-00626, dated December 17, 2018, on which the plaintiff checked the boxes for discrimination based on age and retaliation and alleged facts supporting discrimination based on age and retaliation for engaging in activity protected by the ADEA (Doc. No. 14-1). Based on this charge, US Bank argues that the plaintiff's Title VII discrimination and retaliation claims must be dismissed for failure to exhaust, as the plaintiff's December 17, 2018 EEOC charge alleges claims under the ADEA only, and the box for Title VII violations is not checked. In addition, referencing the Notice of Right to Sue attached to the Complaint, US Bank argues that the Title VII claim is subject to dismissal because the plaintiff did not obtain notice of a right to sue from the EEOC regarding any Title VII claims. Otherwise, the defendant also argues that any claims under Title VII or the ADEA based on events that took place prior to February 20, 2018—or 300 days prior to December 17, 2018—are time-barred and that the ADEA retaliation claim is subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, because the plaintiff does not adequately allege that she engaged in protected activity or that the defendant had notice that she had engaged in protected activity. Finally, the defendant moves to strike the claims for compensatory and punitive damages under Rule 12(f), since these forms of relief are not available under the ADEA.

In her Memorandum in Opposition (Doc. No. 21),[1] the plaintiff states that she filed a timely Amended Charge of Discrimination on May 16, 2019 ("Amended Charge") that asserts claims of

---

[1] The plaintiff actually filed, as two separate documents, a single-page (not counting the signature and certificate of service) Response of Plaintiff Jennie O'Bryan in Opposition to Defendant US Bank National Association's Partial Motion to Dismiss and Motion to Strike (Doc. No. 20) and Memorandum of Law in Opposition to Defendant US Bank National Association's Partial Motion to Dismiss and Motion to Strike (Doc. No. 21). Although the court's Local Rules require that every *motion* requiring resolution of an issue of law "be accompanied by a separately filed memorandum of law," L.R. 7.01(a)(2), this requirement does not pertain to *responses*. *See*

discrimination and retaliation under both Title VII and the ADEA. Upon the filing of the defendant's motion, plaintiff's counsel inquired of the EEOC regarding the handling of the Amended Charge and learned that, due to an agency mistake, the Amended Charge had never been served upon the defendant. The agency also confirmed that it issued an incorrect Notice of Right to Sue on January 7, 2020. Following communication with plaintiff's counsel, the EEOC served the Amended Charge on the defendant, revoked the January 7, 2020 Notice of Right to Sue, and issued a new one effective May 28, 2020 that references both ADEA and Title VII claims. (*See* Doc. Nos. 21-2, 21-3.) Based on the Amended Charge and the superseding Notice of Right to Sue, the plaintiff asserts that her Title VII claims were properly exhausted and that the reissued Notice of Right to Sue cured any defect caused by the agency's failure to issue the proper Notice the first time around. She also asserts that her claims for compensatory and punitive damages should not be stricken, since these forms of damages are available under Title VII.

Regarding the defendant's assertion that her claims under Title VII and the ADEA are time-barred, O'Bryan clarifies that her discrimination claims are based upon her wrongful termination after thirty-four years of employment. She also asserts that the Complaint adequately pleads retaliation in violation of the ADEA.

In its Reply (Doc. No. 22), the defendant, somewhat confusingly, reframes its failure to exhaust and timeliness arguments as they relate to the Title VII claims. It argues that, to the extent the plaintiff's Title VII claims are based on conduct that took place more than 300 days before the filing of the Amended Charge, or before July 20, 2018, such claims are untimely and have not been exhausted. In addition, still framing the issue as one of exhaustion, US Bank argues that the

L.R. 7.01(a)(3) ("[A]ny party opposing a motion must serve and file a memorandum of law in response . . . .").

Amended Charge does not allege facts in support of a Title VII sex discrimination claim related to O'Bryan's termination or, indeed, any facts that suggest sex discrimination that took place within the 300-day limitation period, dating from the filing of the Amended Charge. Otherwise, the Reply reiterates the defendant's arguments that the Complaint fails to state a claim for retaliation in violation of the ADEA and that the request for compensatory and punitive damages should be stricken.

The court granted the plaintiff leave to file a Surreply (Doc. No. 26) to address the new arguments raised in the Reply.

## II.     STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

## III.  DISCUSSION

### A.  Statute of Limitations—ADEA and Title VII Claims

In its original Memorandum, the defendant asserts that the plaintiff's claims under both the ADEA and Title VII are subject to dismissal for failure to exhaust to the extent that the claims are premised upon discriminatory or retaliatory conduct that took place more than 300 days before the filing of the EEOC Charge, or prior to February 20, 2018. In its Reply, the defendant similarly argues that, to the extent the plaintiff's Title VII claims are based on events that took place more than 300 days before the filing of the Amended Charge, such claims are time barred. Although the argument, in both the original Memorandum and the Reply, is framed in terms of a failure to exhaust (*see* Doc. No. 14, at 9 ("Allegations Prior To February 20, 2018 Are Unexhausted."), Doc. No. 22, at 1 ("Plaintiff's Title VII Claims were not exhausted.")), the defendant's actual argument is that the claims are, at least in part, "time-barred." (Doc. No. 14, at 9; *see also* Doc. No. 22, at 2 ("Thus, Title VII claims based on conduct occurring before July 20, 2018 are untimely as a matter of law.").)

In response, the plaintiff does not dispute that, to exhaust claims under Title VII and the ADEA, the EEOC charge must be filed within 300 days of the discrimination about which she

complains.[2] Instead, she asserts that the defendant's argument "misconstrue[s] the Complaint," which alleges that the defendant discriminated and retaliated against her by terminating her employment in November 2018. (Doc. No. 21, at 2; *see id.* at 5 (citing Doc. No. 1 ¶¶ 69–70).) Because the EEOC Charge and Amended Charge were filed, respectively, five weeks and 189 days after her termination, the claims based on her termination are timely. (*Id.*) The plaintiff also argues that she is not barred from presenting evidence of events that took place more than 300 days prior to the filing of the EEOC charge as providing support for her claims that events that took place within the limitations period were discriminatory. (*Id.* at 5.)

The defendant is correct that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred." *Morgan*, 536 U.S. at 113. The plaintiff, however, is also correct that a party is not barred "from using the prior acts as background evidence in support of a timely claim.'" *Id.*

Insofar as the Complaint may be considered ambiguous on this point, the court will grant in part the defendant's motion to dismiss any claims based on events that took place more than three hundred days prior to the filing of the EEOC Charge or, as relevant, the Amended Charge.

---

[2] "In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days. A claim is time barred if it is not filed within these time limits." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (citing 42 U.S.C. § 2000e-5(e)(1)). Tennessee is a "deferral" state in which the 300-day limitations period applies. *See Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 197 (6th Cir. 1995).

### B.    Failure to Exhaust Title VII Claims

It is well established that the defense of failure to exhaust administrative remedies may appropriately be resolved by motion to dismiss under Rule 12(b)(6). *Youseff v. Ford Motor Co.*, 225 F.3d 660 (Table), 2000 WL 799314 at \*3 n.3 (6th Cir. 2000); *Coleman v. Ohio State Univ. Med. Ctr.*, No. 2:11-CV-0049, 2011 WL 3273531, at \*4 (S.D. Ohio Aug. 1, 2011)).

In addition, while the court may not generally consider matters outside the pleadings in ruling on a Rule 12(b)(6) without converting the motion into one for summary judgment, Fed. R. Civ. P. 12(d), EEOC charges and right to sue notices are considered to be public records that the court may consider without converting the motion into one for summary judgment, even if they were not filed with the complaint itself. *Accord Williams v. Steak 'N Shake*, No. 5:11CV833, 2011 WL 3627165, at \*3 (N.D. Ohio Aug. 17, 2011); *Rhea v. Dollar Tree Stores, Inc*., 395 F. Supp. 2d 696, 703 (W.D. Tenn. 2005) (EEOC charge was part of the public record for purposes of a motion to dismiss on statute of limitations grounds).

Regarding the argument raised initially in the defendant's Motion to Dismiss, it seems clear that the plaintiff did, in fact, file an Amended Charge that the agency inadvertently failed to serve upon the defendant. After having been apprised of that error, the agency served the Amended Charge on the defendant and revoked and reissued the Notice of Right to Sue, thus obviating the first ground, and curing the second, upon which the defendant's motion was originally premised. *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 310 (6th Cir. 2000) (holding that the district court erred in dismissing the plaintiff's ADA claim, where the plaintiff had received his right to sue letter prior to the district court's order dismissing the claim for failure to exhaust).

The defendant effectively concedes this point in its Reply but then slightly refocuses its argument in order to continue to argue that the plaintiff failed to exhaust her Title VII claims. US Bank characterizes the Title VII claim asserted in the Amended EEOC Charge as based on actions

by Mike Martin that took place before or during April 2017. (Doc. No. 22, at 2 (citing Doc. No. 21-2 ¶¶ 2–3.) Further, responding to O'Bryan's contention that her claims are premised upon her termination, which took place within the limitations period, the defendant asserts that the Amended Charge does not actually "allege any facts in support of a Title VII sex discrimination claim related to her termination (or any other conduct)," because all of the facts set forth in the Amended Charge regarding discrimination in connection with the termination "relate to her claim of age discrimination." (Doc. No. 22, at 3.) US Bank argues that, as a result, the Title VII discrimination claim must be dismissed for failure to exhaust.

It is well settled that exhaustion is a prerequisite to filing suit under Title VII and that a claimant exhausts her remedies by filing a charge with the EEOC. *Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 470 (6th Cir. 2008) (citing *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 379 (6th Cir. 2002)). The purpose of the exhaustion requirement "is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation." *Id.* at 471 (quoting *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004)). To that end, "the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Dixon*, 392 F.3d at 217 (*quoting* Weigel, 302 F.3d at 379).

To effectively exhaust, the EEOC charge, besides being timely, must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018), *reh'g denied* (July 6, 2018) (quoting 29 C.F.R. § 1601.12(b)). "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in [her] EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (citing 42 U.S.C. § 2000e-5(f)(1)). This rule is not strictly construed however;

"whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Id.* at 362 (citation omitted). The court's inquiry into whether an EEOC charge is sufficiently specific is objective and focuses on the EEOC investigation one would reasonably expect to occur—not the EEOC investigation that actually occurred. Thus, "a plaintiff may fully exhaust her administrative remedies on a claim even if the claim was not actually investigated by the EEOC, or specifically stated in the charge. . . ." *Scott*, 275 F. App'x at 471. The Sixth Circuit has never expressly required, however, that an EEOC charge state all of the elements of a *prima facie* case of discrimination or retaliation. *See Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006), ("[T]he requirement . . . is not meant to be overly rigid, nor should it 'result in the restriction of subsequent complaints based on . . . the failure of the charges to contain the exact wording which might be required in a judicial pleading.'" (quoting *EEOC v. McCall Printing Co.*, 633 F.2d 1232, 1235 (6th Cir. 1980)).

The Amended Charge in question here has checkmarks in the boxes for sex discrimination, age discrimination, and retaliation, indicating that the plaintiff intended to assert those claims. The narrative in support of the claims alleges that the plaintiff is (or was at the time) a fifty-three year-old woman who had been employed by US Bank since 1984. It contains specific examples of sex-based comments and allegedly harassing behavior by a colleague, Mike Martin, and the plaintiff's making a complaint about that conduct to Human Resources in the fall of 2016. (*See* Doc. No. 21-2, at 1.) She also alleges that, in April 2017, Martin and a younger woman were promoted to new positions one step above the position then occupied by both the plaintiff and Martin, about which the plaintiff did not receive notice or an opportunity to interview. Despite her relevant lack of

experience in the relevant field, the newly hired woman became the plaintiff's direct supervisor, and the new supervisor worked in a partnership with Martin.

The remainder of the narrative focuses primarily on the plaintiff's problems with her new direct supervisor—facts supporting the plaintiff's age discrimination claim. However, the narrative also includes allegations that the false accusations that ultimately led to O'Bryan's termination came from an employee under Martin's supervision and that, after O'Bryan's termination, she was replaced by a younger, male employee. (*Id.* at 1–2.) The allegations in the Complaint do not substantially differ from or amplify those in the Amended EEOC Charge. The only significant addition to the Complaint relating to O'Bryan's termination is the allegation that Mike Martin and Tupman were "both . . . involved in the decision to terminate Plaintiff." (Doc. No. 1 ¶ 65.)

To be clear: the defendant here does not seek dismissal of the Title VII discrimination claim based on a failure to state a *prima facie* case in the Complaint. Rather, perhaps because the defendant is committed to coloring within the lines of the picture it drew in its original Memorandum in support of the Motion to Dismiss, the defendant frames the argument entirely under the heading of a failure to exhaust. And, while it is clear that the allegations regarding sex discrimination occurring within the limitations period are thin, it is also apparent that the allegations are "sufficiently precise to identify the parties, and to describe generally the action or practices complained of," *Peeples*, 891 F.3d at 630, and that they are basically co-extensive with the claims in the plaintiff's Complaint. That is, the claims in the lawsuit were included in the EEOC charge, meaning that the Amended Charge served its purpose of "giv[ing] notice to the alleged wrongdoer of its potential liability and enabl[ing] the EEOC to initiate conciliation procedures in an attempt to avoid litigation." *Scott*, 275 F. App'x at 471.

In sum, viewing the Amended Charge objectively, the court finds that the plaintiff fully exhausted her Title VII claims. The motion to dismiss them on this basis, therefore, will be denied.

Moreover, because it is undisputed that a violation of Title VII permits the recovery of compensatory and punitive damages, at least under certain circumstances, *see* 42 U.S.C. § 1981a(b), the court will deny without further discussion the defendant's Motion to Strike.[3]

## C.  ADEA Retaliation Claim – Failure to Allege Protected Activity and Notice of Protected Activity

The ADEA prohibits employer retaliation against an employee "because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this [Act]." 29 U.S.C. § 623(d). A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). ADEA retaliation claims based on circumstantial evidence are analyzed under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012). To establish a *prima facie* case of retaliation, a plaintiff must show that "(1) she engaged in a protected activity, (2) the defending

---

[3] The court discourages the refiling of a similar motion to strike in the event that the plaintiff's Title VII claims are dismissed at a later stage of the litigation. "The function of the motion [to strike] is to 'avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with' them early in the case." *Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (quoting *Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986)). Such motions, however, "are viewed with disfavor and are not frequently granted." *Id.* at 1050 (citing *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)). The request for such damages in this case was not spurious in light of the fact that it was accompanied by claims under Title VII, which authorizes the recovery of such damages. Moreover, by the terms of the statute, monetary remedies under the ADEA are limited to back pay and liquidated damages. 20 U.S.C. § 626(b). Consequently, it is clear that the plaintiff's damages will be limited accordingly if she ultimately does not prevail on her Title VII claims.

party was aware that the [plaintiff] had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and [the] adverse action."

US Bank argues that the ADEA retaliation claim is subject to dismissal because the Complaint does not allege facts sufficient to establish either that the plaintiff engaged in activity protected by the ADEA or that US Bank was aware that she had engaged in such activity. (*See* Doc. No. 14, at 10–11.) Specifically, the defendant claims that the plaintiff's assertion that she "complained that she was being treated differently than the younger employees" (Doc. No. 1 ¶ 57) amounts to a vague and conclusory recitation of an element of the cause of action that is insufficient to state a colorable claim. (*See* Doc. No. 14, at 10–11.) It also argues that the plaintiff has not pleaded specific facts to "make it plausible that the alleged decision makers . . . had knowledge of the protected activity." (*Id.* at 11.)

To prevail on an ADEA retaliation claim, a plaintiff must prove that she took an "overt stand against suspected illegal discriminatory action to establish that she engaged in a protected activity." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012) (internal quotation marks and citations omitted). The plaintiff employee "'may not invoke the protections of the Act by making a vague charge of discrimination.'" *Id.* (quoting *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007)); *see also Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989) (holding that complaints about "ethnocism" were too vague to constitute protected activity).

The Complaint in this case enumerates several actions that Tupman allegedly took that the plaintiff believes reflected age discrimination. These allegations culminate with the plaintiff's allegations that Tupman gave the plaintiff a negative mid-year 2018 performance review but that

the review contained incorrect information. When the plaintiff brought the errors to Tupman's attention, "Tupman angrily and forcefully ripped the papers from Plaintiff's hand, stating she would have her administrative assistant correct it. That never occurred." (Doc. No. 1 ¶ 56.) In the next eight paragraphs, the plaintiff alleges as follows:

> 57. Plaintiff complained that she was being treated differently than the younger employees.

> 58. Tupman continued to praise the younger employees and questioned Plaintiff's ability to perform her job, while at the same time standing Plaintiff up for meetings and ignoring her requests and business needs.

> 59. Tupman unjustifiably accused Plaintiff of being unethical and advised she was having Plaintiff investigated. She was subsequently forced to acknowledge that there would be no investigation.

> 60. In mid-October 2018 Plaintiff was wrongfully accused of making a profane statement to a younger employee.

> 61. The person who made the false allegation was an individual on the investment side, who was under Martin's supervision.

> 62. Human Resources pressured Plaintiff to admit that she had made the alleged statement, but it was not true.

> 63. Tupman said she would investigate the situation but Plaintiff was never contacted regarding an investigation by Tupman or Human Resources.

> 64. Plaintiff was wrongfully terminated on November 8, 2018.

(*Id.* ¶¶ 57–64.) Read in context and broadly construed in the light most favorable to the plaintiff, Paragraph 57, following on the heels of Paragraph 56, indicates that the plaintiff complained to Tupman that Tupman was treating her differently from younger employees. The subsequent paragraphs indicate that Tupman, after the plaintiff complained to her about discriminatory treatment, took retaliatory action against her by working with others to orchestrate her termination.

Although the Complaint is not a model of clarity and certainly would have benefited from additional details regarding the plaintiff's complaint about discriminatory conduct, the court finds that it is not so conclusory that it fails to state a claim for which relief may be granted.

**IV.     CONCLUSION**

For the reasons forth herein, the Motion to Dismiss will be granted insofar as the defendant seeks dismissal of any claims that are based on actions that took place outside the limitations period, which the plaintiff does not contest. Otherwise, the motion will be denied.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge